**SPICER v. UNITED STATES.**

No. 48871.

United States Court of Claims.

Feb. 2, 1954.

**378**

Tyree C. Derrick, St. Louis, Mo., F. W. Mueller, St. Louis, Mo., on the briefs, for plaintiff.

Bruce G. Sundlun, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff sues for losses incurred by him in the performance of contracts with the Government. The suit is based upon the Lucas Act, 60 Stat. 902, as amended, 62 Stat. 992, 41 U.S.C.A. § 106 note.

During the statutory period to which the Lucas Act is applicable, i. e. from September 16, 1940, to August 14, 1945, the plaintiff performed work under contracts with the United States Army Corps of Engineers, the work consisting of the construction of streets, roads, runways, taxiways, aprons, and drainage of oil fields in Texas, Oklahoma, Kansas, and Arkansas. Most of this work was done in the last half of 1942 and the first half of 1943.

The plaintiff made a profit on some of his contracts, but lost money on most of his large contracts. He lost money on the Palacios Airport contract which contract involved more than a million dollars, and on his contracts at Newport, Arkansas and Perry, Oklahoma, each of which had a contract price of about $400,000. He made money on a one million dollar contract at the Winfield, Kansas, airport, and lost money on two small contracts for about $20,000 each at Camp Chaffee, Arkansas, and Muskogee, Oklahoma.

On October 26, 1943, the plaintiff filed an application for relief under the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., the application relating to the Winfield, Newport, Perry and Palacios contracts. The amount claimed was $445,095.18. In February and March 1944, the plaintiff filed supplementary applications for relief under the First War Powers Act for losses sustained on these same contracts. The amount claimed was $412,079.73. After an investigation, the Corps of Engineers made supplemental agreements with the plaintiff as to each of these contracts which gave him $137,232.75 in settlement of his requests for relief under the First War Powers Act on the three contracts on which the present suit is based.

After the enactment of the Lucas Act on August 7, 1946, the plaintiff, on January 25, 1947, filed a claim for relief under the Lucas Act. That claim was denied by the Chief, Army Engineers, and by the War Hardship Claims Board because Paragraph 204 of Executive Order 9786, U.S.Code Cong.Service 1946, p. 1851, issued in implementation of the Lucas Act provided that no claim should be allowed if it had been considered and final action had been taken on it before August 14, 1945.

The plaintiff then filed his suit in this court. The Government made a motion to dismiss. We denied the motion on the ground that Paragraph 204 of Executive Order 9786, was invalid because it was

in contradiction of the provisions of the Lucas Act which it purported to implement. Spicer v. United States, 83 F. Supp. 345, 113 Ct.Cl. 267. On May 27, 1949, this court issued an order requiring plaintiffs in Lucas Act cases and the Government to prepare audits showing their respective positions with reference to losses incurred by plaintiffs on which claims had been made, and losses on all Government contracts during the pertinent period. Such audits were made, and the attorneys for the parties prepared a stipulation with reference to losses. At the beginning of the trial of the case before the Commissioner of this court this stipulation was read into the record. It said "the parties agree that the loss incurred during the periods of performing the contracts involved in this suit amounted to $309,939.21 in excess of the amounts which have been paid the plaintiffs." Government counsel said that he agreed that the figures were correct "except for some adjustment on the insurance." No question of insurance is now in controversy. He further said "However, the Government does not agree that the plaintiff is entitled to recover the amount shown; and first it would have to prove that the $309,000 figure represents losses which were not due to fault or negligence of the plaintiff. Second, the Government's position further is that it is a legal question of prior settlement."

This court having already decided, as shown above, that the prior settlement did not preclude recovery, counsel's statement about prior settlement merely reserved the right to present again to this court, or to present to the Supreme Court, that legal question. The stipulation, then seemed to leave no question of fact to be tried except that of whether the plaintiff's losses were due to his fault or negligence. The stipulation was so interpreted by the parties. At hearings, most of which took place approximately a year after the stipulation had been entered in the record, the only evidence presented was evidence as to fault or negligence.

Our Commissioner made his findings of fact, based in relevant part upon the stipulation. The Government, in its brief, takes the position that the stipulation is substantially worthless; that the figure of $309,939.21 produced by the audits is not an amount which the plaintiff may recover, even if he persuades us that his losses were not due to his fault or negligence. It says that, as to each of the contracts, the plaintiff may not recover more than it lost, which amount we do not know, and that, even if we knew it, the plaintiff could not, as to that contract, recover more than it claimed in its written requests for relief made before August 14, 1945, less the amount which was awarded it by way of relief on that contract by the administrative action under the First War Powers Act.

If we were to adopt the Government's position, the case would be substantially where it was four and one-half years ago when we denied the Government's motion to dismiss and sent the case to trial. The whole purpose of our requirement of audits preliminary to trial would be nullified. We have a right to assume that, under the guidance of counsel, the audits made will be intelligently made, and will produce figures which are relevant to the solution of the case. Here the audit was made, it was put into the hands of experienced Government counsel, and, on the basis of the audit, he entered into a stipulation that the plaintiff's losses were $309,939.21. He meant, of course, the plaintiff's Lucas Act losses, since otherwise the stipulation would have been useless and meaningless. And he said so, by inescapable inference, in his statement as to what defenses the Government still relied on. We are not willing to set aside the stipulation, and reopen the case for the purpose of allocating losses to particular contracts.

We think, however, that the amount named in the stipulation is in excess of what the law permits the plaintiff to recover and, since that error can be corrected on the present record and without delay, we will correct it.

Section 3 of the Lucas Act provides that:

"Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945 * * *."

As we have seen, the plaintiff filed a request for relief on October 26, 1943, claiming $445,095.18. This claim included a small item for the Winfield contract on which, as it later appeared, the plaintiff made a profit. In February and March 1944, the plaintiff filed itemized requests on the three contracts which are the ones involved in this suit. The total amount claimed was $412,079.73. These claims were intended to amend and replace the October 26, 1943 claim. On these claims the plaintiff was awarded $137,232.75 by the Chief of Engineers. That left $274,846.98 requested and not paid.

The plaintiff says that all of its requests for relief were for all of its losses, and that the items and figures which it inserted in them were of no significance. But Section 3 of the Lucas Act limits recovery to losses "with respect to which a written request for relief was filed". If one names $100,000 in his request and says nothing about any further amount, we think he has not filed a request for $200,000, although that may turn out to have been his loss. Congress may well have intended that the contracting agency should have had an opportunity at the earliest stage of the case, to pass upon the contractor's claim, which it would not have if he then only requested half of what he later claimed. We think, therefore, that Section 3 of the Lucas Act limits the plaintiff to the recovery of $274,846.98 and that the Government's stipulation does not prevent us from applying that limitation.

The plaintiff paid interest on borrowed money in the amount of $39,889.73, and attorneys' fees in the prosecution of his requests for relief in the amount of $43,685.48. We do not decide whether these items were costs of performance which should be included in the plaintiff's losses, since, as we have shown, his other and more direct losses already exceed the amount to which Section 3 of the Lucas Act limits his recovery. Further, the plaintiff's written requests for relief made no mention of these types of expenditures, hence they fail in this respect also to comply with Section 3 of the Lucas Act. See Rosner v. United States, 113 F.Supp. 439, 125 Ct.Cl. 614.

▮ As we have said, the Government reserved its right to defend on the ground that the plaintiff's losses resulted from his fault or negligence. Much evidence was produced by the parties for and against this contention. The Government now asserts such fault or negligence only as to one contract, that for the Palacios Airport. One item of alleged fault or negligence is the low bid which the plaintiff made for the contract. We think that Congress can hardly have had in mind, in providing that fault or negligence should be a bar to recovery of losses under the Lucas Act, that a contractor who had saved the Government money by taking a contract at a low price, should thereby have disqualified himself from recovery. His contract price having been low, if by good fortune he had succeeded in performing the contract without loss, the Government would have had the benefit of the low bid, even assuming the enactment of the Lucas Act some years after completion of the contract. If, unfortunately, the contractor did suffer a loss, but performed the contract satisfactorily, as this plaintiff did, the Government still had a saving, at the contractor's expense, which it could keep, unless it chose, by an act of generosity such as the Lucas Act, to give it up. And even if it chose to give up the saving which it had made at the expense of a loss to the contractor, as it did choose to do in enacting the Lucas Act, the Government is not one penny out of pocket because of the contractor's low bid. The contractor is hurt by getting back his lost money at the end of a Lucas Act proceeding rather than hav-

ing put it in the contract price, because he gets it years later without interest. But the Government isn't hurt at all. If the contractor had bid high enough to come out with a profit, he would have kept the profit, unless it was so high as to be subject to renegotiation.

The Government further contends that the plaintiff was guilty of fault or negligence in his performance of the Palacios Airport contract and that his losses, or some part of them, resulted from the way in which he planned and carried on the work. We suppose that if the plaintiff had foreseen the amount of rainfall which actually occurred, and the labor and machinery problems which developed, he would have conducted the operation differently, and might well have avoided some expense. But the plaintiff's difficulties seem to us to be similar to those of many contractors in cases litigated in this court, and we suppose that there is no practicable way to foresee and avoid them. We think the plaintiff was not guilty of fault or negligence, as that expression is used in the Lucas Act.

The plaintiff is entitled to recover $274,846.98. The defendant is entitled to recover from plaintiff on its counterclaim $18,815.45 for taxes, together with interest as provided by law, and to recover from Spicer Construction Co., Inc., on its counterclaim $7,737.74 for taxes, together with interest as provided by law, these sums to be withheld from the amount plaintiff is entitled to recover. The Department of the Army is directed to settle plaintiff's claims in accordance with these amounts.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LITTLETON, Judge (dissenting in part).

I agree with the decision except as to the amount allowed. I am of the opinion that under Section 3 of the Lucas Act the plaintiff is entitled to recover the full amount of its loss shown herein of $309,-939.21, and should not be limited by the court, under Section 3 of the Lucas Act, to the specific items making up a claim filed by plaintiff under the First War Powers Act prior to the passage of the Lucas Act.